(No. 3108—

Roscoe Blanton, Claimant, *vs.* State of Illinois, Respondent.

*Opinion filed May 10, 1938.*

Burrel Barash, for claimant.

Otto Kerner, Attorney General; Glenn A. Trevor, Assistant Attorney General, for respondent.

MR. JUSTICE YANTIS delivered the opinion of the court:

Claimant, Roscoe Blanton, was and still remains, according to the record, employed by the State as a highway maintenance patrolman. On November 18, 1935 while loading a gravel truck near Williamsfield, Illinois, in the performance of his duties, a cave-in occurred which covered claimant to the waist with gravel and dirt, resulting in a broken bone in the left leg about six inches above the knee. He was immediately attended by Dr. Wm. H. Maley of Galesburg, who pronounced the injury a compound fracture of the left femur about five inches above the knee. Due apparently to some splintered bone, the patient did not show proper recovery and Dr. Maley operated and continued in charge of the case until June 3, 1936 when the patient was transferred to Dr. H. B. Thomas, Orthopedic Surgeon, of 30 N. Michigan Ave., Chicago. Dr. Thomas operated on June 5, 1936 and reported that he removed a muscle lying between the two bones which prevented a union, and that new bone was put from the tibia around the fracture. Dr. Thomas retained the case until the patient was given a final medical discharge on March 1, 1937. At that time the patient was suffering from a stiffness of the knee, and Dr. Thomas estimated a permanent partial loss of use of the leg of twenty-five (25) per cent. On December 24, 1937 Dr. Thomas reported that under continued physiotherapy treatments patient's condition has improved and his range of knee motion had increased from fifty (50) per cent to sixty-six (66) per cent; that in his opinion it would continue to improve but that at the present time he has a disability of partial loss of use of the leg of twenty (20) per cent. Dr.

Thomas is Professor and head of Orthopedics at the College of Medicine, University of Illinois and Research and Educational Hospitals. Dr. Maley testified that there is excessive ankylosis of the knee and a bow of the thigh bone, and that three of the toes on the left foot are badly ankylosed and their motion limited, resulting in a limited flexion or motion of the left knee and foot of forty-five (45) degrees; that in his opinion the patient has a permanent partial loss of thirty-three and one-third (33 1/3) per cent of the use of the left leg.

The State has expended large sums in giving to the claimant the best of care. It has paid Dr. Maley Four Hundred ($400.00) Dollars; Dr. Thomas, Six Hundred Sixty-one ($661.00) Dollars; St. Mary's Hospital, at Galesburg, Five Hundred Seventy-one and 50/100 ($571.50) Dollars; and St. Luke's Hospital, in Chicago, Three Hundred Fifty-four and 60/100 ($354.60) Dollars. The entire amount paid by the Highway Division for the above items, together with nurse hire, board, etc., is Two Thousand Two Hundred Seventy-six and 91/100 ($2,276.91) Dollars.

In addition thereto, there was paid to the claimant be-was no evidence in the record from which a computation tween the date of his injury on November 18, 1935 and his final medical discharge on March 1, 1937, the following items:

| | |
|---|---|
| November, 1935 (19th to 30th inclusive).................. | $ 48.00 |
| December, 1935 to May, 1936, inclusive, 6 months at $120.00.. | 720.00 |
| June 1936 to February, 1937, inclusive, 9 months at $60.00.. | 540.00 |
| | $1,308.00 |

Claimant had been regularly employed as a highway maintenance patrolman from June 25, 1934, and during the year immediately prior to the accident had received salary at the rate of One Hundred ($100.00) Dollars per month up to September 5, 1935 and from then on at One Hundred Twenty ($120.00) Dollars per month, making a total yearly salary of One Thousand Two Hundred Ninety-one and 25/100 ($1,291.25) Dollars, or an average of Twenty-four and 83/100 ($24.83) Dollars per week. Under the provisions of *Paragraphs (a)* and *(b)* of *Section 8* of the *Illinois Workmen's Compensation Act,* claimant was entitled to surgical care and also to compensation equal to fifty (50) per cent of his earnings but not in excess of Fifteen ($15.00) Dollars per week.

The evidence shows that claimant is married and has one child, but that such child was not under sixteen years of age at the time of the accident. Claimant now seeks an award, under the provisions of *Paragraphs (e), 15-17, Section 8* of the *Act*, for the partial loss of use of his left leg. Said Paragraph (e) provides, that, "The compensation which claimant can be paid for the period of temporary total incapacity shall not exceed sixty-four (64) weeks." The Attorney General contends that the sum of One Thousand Three Hundred Eight ($1,308.00) Dollars previously paid to claimant is all for compensation; that claimant was entitled to temporary total disability for only a period of sixty-four (64) weeks from November 18th, 1935 to February 8th, 1937; further, that any over-payment is to be credited against such amount as claimant may be entitled to for specific partial loss of use of his left leg.

Claimant contends that the payment at the rate of One Hundred Twenty ($120.00) Dollars per month made to him by the Highway Department from the date of his accident to May 31, 1936, in a total sum of Seven Hundred Sixty-eight ($768.00) Dollars was made voluntarily as wages and must be regarded as having been made gratuitously or in the expectation of saving the life of the employee or reducing his disability and reducing the total compensation for which the employer would eventually be liable; that under the authority of *Crescent Coal Co.* vs. *Ind. Comm.*, 286 Ill., 102 and *Western Cartridge Co.* vs. *Ind. Comm.*, 327 Ill., 29, there is no authority for the court to deduct any part of said amount, as an over-payment of temporary compensation, from any amount found to be due for specific loss. The latter case is misconstrued by counsel. The statement therein made is, "An *allowance* for temporary total disability is not deductible from an allowance for partial permanent or total permanent disability." This does not mean that if an *over-payment* has been made for temporary total disability such *over-payment* cannot be entered as a credit to the employer when called upon to pay specific loss or partial or total permanent disability.

Claimant contends that the only point at issue in this case is the amount of specific loss to his leg, and that the court has no right "to delve into the amount of temporary compensation paid or to order a deduction of any over-pay-

ment made thereon, from any award now made to claimant for specific loss." Counsel for claimant state that, "they have found no provision in the Act which furnishes any authority whereby the court would have jurisdiction to make any such deduction." Claimant has received and now seeks further payments from his employer for injuries that were the result entirely of his own negligence. He is only entitled to receive such payment because of a special remedial statutory law granting to him specific rights. Claimant is entitled only to the specific sums of money which the terms of such Act designate. We therefore hold that in considering the amount of money which any employer is called upon to pay for injuries and loss of time growing out of an accident, the court has authority to take into account any and all payments of compensation that have been made to claimant, in determining what further amount may be due him.

Whether or not the payments made to claimant for the period from November 18, 1935 to May 13, 1936 should be treated as payment *of wages or of compensation* is not easily determined from the record. During all of such period claimant was incapacitated from work and was receiving surgical treatment from Dr. Maley, but received payments from month to month in the full amount of his regular wages. After June 1, 1936, to March 1, 1937 he received payments of Sixty ($60.00) Dollars per month. Claimant cites the case of *Lewis* vs. *Ind. Comm.*, 357 Ill. 309 in support of his contention, that the payments should be treated as wages. No notice of claim for compensation was made within six months after the date of the employee's injury, but a claim was filed by his widow within six months after the date of the last of the three payments. Counsel for claimant there contended, that the demand for wages constituted notice of claim for compensation within the meaning of *Section 24* of the *Act*. The court held, that the request *for his wages* conveyed no intimation that he asserted any legal right to compensation; that there was no evidence showing that the employer had any notice of any accident until more than six months thereafter; that the requests were for his wages and not for compensation; that the employer in that case, according to an established custom, paid the wages which the employee would have received had he been engaged in the performance of his duties, and that such payments were apparently made voluntarily and with-

out reference to any provision of the Workmen's Compensation Act; that the employee's wife receipted for such payments as wages. The court further held, that the question whether a claim for compensation has been made as required is a question of fact to be determined like any other similar question. The present case is to be distinguished from the Lewis case. Here, the employer at once knew of the accidental injury and immediately began furnishing surgical care. The funds paid to claimant were all for unproductive time, while he was disabled from the accident in question. The payment of full wages during a period of disability, although under a Company policy of paying full wages while employees are away from work on account of sickness or injury, will be treated as a payment of compensation when the employer knew that the employee was disabled on account of an accidental injury and when such employer at the time of such payments does not deny liability. In other words, where the employer knows that the disability or inability to work is due to the accidental injury and he makes payments, even under a policy of paying full wages during inability to work, with no denial of liability for compensation, such payments will be regarded as payment of compensation. This rule is fully set forth in the case of *United Air Lines, Inc.* vs. *Ind. Comm.,* 364 Ill. 346. In that case the court said:

"The defendant in error concedes that he made no claim for compensation against the employer within the six-months' period and that he did not make an application for compensation with the Industrial Commission within the one-year period, but he insists that he did make an application for compensation with the Industrial Commission within one year after the last payment of compensation. His contention in this regard is the vital question in the case. The facts are very similar to those in *Field & Co.* vs. *Industrial Com.,* 305 Ill. 134, in which the rule was laid down that where an employer makes payments to an injured employee during a period of time when the employee is unable to work, and liability under the Compensation Act is not denied, such payments will be construed to have been made in consequence of the employer's liability. This rule is based upon the doctrine that when the employer has knowledge of the injury and does not deny liability, the employee has a right to regard the payments as having been made under the Act and is not bound to make demand for further compensation as long as the payments are continued. It is the duty of an employer to provide an employee who has suffered an accidental injury arising out of and in the course of his employment, necessary first aid and medical, surgical and hospital services, and, in case of temporary total incapacity for work, to pay compensation as long as such incapacity lasts, subject to the limitations provided by sub-section (b) of Section 8 of said Act.

The mere fact that the company has adopted a policy of paying its employees when they are unable to work, and does so, is not sufficient to bar the right of the employee to claim compensation when the employer ceases to make further payments. Any other doctrine would be in contravention of the purpose and the spirit of the Compensation Act."

The total amount paid claimant herein during the period of his disability will therefore be regarded as compensation and will be taken into account in computing the right to an additional award and for any further payment, to which he may now be entitled.

Claimant is entitled to an award for specific disability. The evidence shows that his left leg is one inch shorter than the right, and that there is a stiffness of the knee and ankle joints and of three toes, and forty-five (45) degrees limited motion in the left ankle and in the bending of the left knee.

From an examination of the entire record including the testimony of Dr. Maley and Dr. Thomas, we find that claimant is entitled to an award of twenty-six (26) per cent specific loss of use of the left leg; such loss resulting from the accidental injury suffered by claimant while an employee of the State of Illinois on the 18th day of November, 1935. Claimant's average weekly wage for the year preceding said accident was Twenty-four and 83/100 ($24.83) Dollars. Under the provisions of *Section 8 (e) 15-17* of the *Act* he is entitled to payment for specific loss of fifty (50) per cent of said sum for the period of 49.40 weeks, or Six Hundred Thirteen and 05/100 ($613.05) Dollars for 26% loss of use of his left leg. He was entitled to compensation for temporary total disability at the rate of Twelve and 41/100 ($12.41) Dollars per week for sixty-four (64) weeks, or Seven Hundred Ninety-four and 24/100 ($794.24) Dollars. This added to the amount due for specific disability totals One Thousand Four Hundred Seven and 29/100 ($1,407.29) Dollars. He has heretofore received One Thousand Three Hundred Eight ($1,308.00) Dollars, leaving a balance due on the present award in the sum of Ninety-nine and 29/100 ($99.29) Dollars.

It is therefore ordered that an award be and the same is hereby made in favor of Roscoe Blanton, claimant herein, for the sum of Ninety-nine and 29/100 ($99.29) Dollars. As the total amount of such award has heretofore accrued, same is payable in full at this time.

This award being subject to the provisions of an Act entitled, ''An Act Making an Appropriation to Pay Com-

pensation Claims of State Employees and Providing for the Method of Payment Thereof," Approved July 3, 1937 (Sess. Laws 1937 p. 83), and being, by the terms of such act, subject to the approval of the Governor, is hereby, if and when such approval is given, made payable from said appropriation from the Road Fund in the manner provided for in such Act.